**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Republic Services Procurement Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>TrueBlue Incorporated,<br><br>Defendant. | No. CV-19-00300-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff Republic Services Procurement Incorporated's Motion for Partial Judgment on the Pleadings (Doc. 25, Mot.), to which Defendant TrueBlue Incorporated filed a Response (Doc. 26, Resp.), and Plaintiff filed a Reply (Doc. 28, Reply). The Court heard oral argument on the Motion on May 14, 2019 (Doc. 32, Tr.).

**I.  BACKGROUND**

On February 20, 2011, Plaintiff and Defendant entered into a National Temporary Labor Services Agreement (the "Agreement") whereby Defendant would provide temporary laborers at facilities affiliated with Plaintiff. (Doc. 1-1, Compl. ¶ 6.) The Agreement includes the following provision:

> [Defendant] agrees to defend, hold harmless and unconditionally indemnify [Plaintiff], [and Plaintiff's] Affiliates . . . from and against all direct and indirect losses, claims, demands, actions, causes of action, liabilities, suits, debts, costs, expenses . . ., penalties, fines, assessments and damages (collectively, "Losses") [Plaintiff] may at any time suffer or sustain or become liable for by reason of any accidents, damages, violations, injuries, illness or diseases . . . either to the employees or property or both of [Defendant] or [Plaintiff] . . . in any manner caused by, resulting or arising from or related to: . . . Losses asserted against [Plaintiff] by or on behalf of [Defendant's] Personnel . . . where such Losses are caused in whole or in part

> by any actions of any third party or of [Defendant's] Personnel; provided, however, that [Defendant] shall have no obligation to defend, hold harmless, and indemnify for any Losses that are caused solely by the negligent actions or failures to act or strict liability of [Plaintiff] unless such Losses relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance, even if the claimant alleges that the Losses are caused by the negligent actions . . . of [Plaintiff].

(Mot. Ex. 1 at 11–12.) The Agreement also provides that it "may be modified or supplemented by the parties only if done in writing and signed by an authorized representative of each party." (Mot. Ex. 1 at 13.)

On August 17, 2015, Karen Newsuan, a laborer working under the Agreement, was seriously injured at a Plaintiff-affiliated facility (the "Newsuan Injury"). (Compl. ¶¶ 13–14.) Also on August 17, 2015, an authorized representative of Plaintiff at that facility signed a work ticket (the "Work Ticket") providing that Plaintiff "shall comply with all applicable laws relating to health and safety." (Resp. at 3–4.) The Work Ticket further stated that Plaintiff would hold harmless Labor Ready, a subsidiary of Defendant, "from any claims and all liability, caused or alleged to have been caused by [Plaintiff's] breach of this agreement." (Resp. at 4.) Neither Labor Ready nor Defendant signed the Work Ticket. (Tr. at 15.)

On August 18, 2015, Plaintiff tendered its defense concerning the Newsuan Injury to Defendant and requested immediate defense and indemnification pursuant to the Agreement. (Compl. ¶ 15.) Defendant refused to defend or indemnify Plaintiff. (Compl. ¶ 16.) On August 8, 2017, Newsuan filed a complaint against Plaintiff for her personal injuries (the "Newsuan Action"). (Compl. ¶ 18.) Plaintiff again requested that Defendant defend and indemnify Plaintiff. (Compl. ¶ 20.) Defendant again refused. (Compl. ¶¶ 21–22.) Newsuan also filed a workers' compensation claim against Defendant. (Doc. 12, Countercl. ¶ 37.) Defendant paid workers' compensation benefits to Newsuan for her work-related injuries. (Countercl. ¶ 39.)

On December 17, 2018, Plaintiff filed suit against Defendant in Arizona state court. Defendant then removed the action to this Court. (Doc. 1.) In the Complaint, Plaintiff raises three claims against Defendant: (1) breach of duty to defend and breach of express

1  contractual indemnity ("Count One"); (2) breach of contractual obligation to procure
2  insurance for Plaintiff and its affiliates ("Count Two"); and (3) declaratory relief ("Count
3  Three"). (Compl. ¶¶ 32–33, 38, 44.) Defendant filed a Counterclaim raising claims for
4  subrogation and breach of the covenant of good faith and fair dealing. (Countercl. ¶¶ 49,
5  55.) Plaintiff now moves for partial judgment on the pleadings as to Count One and Count
6  Three of the Complaint and Defendant's counterclaims. (Mot. at 2.) Defendant voluntarily
7  dismissed its subrogation counterclaim but still maintains that Plaintiff breached the
8  covenant of good faith and fair dealing. (Resp. at 17.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion for judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Interpretation of a contract is a matter of law," *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988), and thus is susceptible to a motion for judgment on the pleadings. Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

A Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Specifically, a complaint—or in this instance, a counterclaim—must include "only 'a short and plain statement of the

1 claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice
2 of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*,
3 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed.
4 R. Civ. P. 8(a). A dismissal for failure to state a claim can be based on either (1) the lack of
5 a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim.
6 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint
7 attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's
8 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels
9 and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
10 *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient
11 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
12 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

**III. ANALYSIS**

Plaintiff argues that Defendant "owes and has breached its duty to defend," (Reply at 3), and further argues that "the Agreement created a broad and clear indemnity obligation for claims such as [the Newsuan Action]." (Mot. at 8.) Defendant, however, argues that the "Work Ticket modified and/or supplemented the Agreement," (Resp. at 6), such that Defendant "has no duty to defend or indemnify [Plaintiff]." (Resp. at 8.) Defendant further argues that "even under the terms of the Agreement, [Defendant] does not have a duty to defend or indemnify [Plaintiff]." (Resp. at 9.)

**A. The Work Ticket did not Modify the Agreement.**

Under Arizona law,[1] "a general principle of contract law is that where parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written." *Estes Co. v. Aztec Const. Inc.*, 677 P.2d 939, 941 (Ariz. Ct. App. 1983). The mere fact that parties disagree about the meaning of a contract does not make it ambiguous. *Shanks v. Davey Tree Surgery Co.*, 845 P.2d 483 (Ariz. Ct. App. 1992). Rather, a contract is ambiguous "only if the language can reasonably

---

[1] The Agreement specifies that Arizona law controls. (Mot. Ex. 1 at 12.)

be construed in more than one sense and the construction cannot be determined within the four corners of the instrument." *J.D. Land Co. v. Killian*, 762 P.2d 124, 126 (Ariz. Ct. App. 1988). Moreover, when interpreting a contract, the Court "presume[s] that the parties intended to give the words employed their ordinary meaning." *Tucker v. Byler*, 558 P.2d 732, 735 (Ariz. Ct. App. 1976).

Here, the Agreement's modification provision is clear: "The Agreement may be modified or supplemented by the parties *only if* done in writing and *signed by* an authorized representative of *each party*." (Mot. Ex. 1 at 13. (emphasis added).) Although an authorized representative of Plaintiff signed the Work Ticket, neither Labor Ready nor Defendant signed the Work Ticket. (Tr. at 14–15.) In accordance with the general principles of contract law, the Court finds that the Work Ticket failed to modify the Agreement because it was not "signed by an authorized representative of each party." Therefore, the terms of the Agreement control.

### B. The Newsuan Action Falls Within the Scope of the Agreement.

Pursuant to the Agreement,

> [Defendant] shall have no obligation to defend, hold harmless, and indemnify for any Losses that are caused solely by the negligent actions or failures to act or strict liability of [Plaintiff] unless such Losses relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance, even if the claimant alleges that the Losses are caused by the negligent actions . . . of [Plaintiff].

(Mot. Ex. 1 at 12.) Plaintiff argues that Defendant "owes and has breached its duty to defend." (Reply at 3.) Plaintiff further contends that Defendant "must indemnify [Plaintiff] against *any losses* [Plaintiff] sustains that are *related to* [a] workers' compensation claim," and because the Newsuan Action, if alleged against Defendant, "unquestionably would have been covered by Arizona's workers' compensation scheme," Defendant must indemnify Plaintiff. (Reply at 3–4.)

Defendant, however, asserts that this provision only applies "to situations in which [Defendant's] workers' compensation insurance proceeds are available to a claimant, but a claimant has not made a workers' compensation claim, and instead, has made a claim

against [Plaintiff]." (Resp. at 11.) Defendant argues that the provision "is not applicable because [] Newsuan in fact *did* make a workers' compensation claim against [Defendant] and [Defendant] has paid [] Newsuan the maximum amount of workers' compensation insurance benefits available to her for the Newsuan Injury." (Resp. at 11.)

The Court finds that the language of the Agreement is clear and unambiguous. Under the Agreement, Defendant has the duty to defend and indemnify Plaintiff for losses that "relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance." (Mot. Ex. 1 at 12.) Contrary to Defendant's suggestion, the applicability of this provision is not dependent on whether the injured laborer has received workers' compensation benefits from Defendant. Rather, in light of the ordinary meaning of the phrase "relate to," the provision applies to losses beyond those that fit squarely within a workers' compensation claim. Had the parties' intended the provision to apply more narrowly, the Agreement could have included language clearly indicating that the provision is inapplicable if a claimant has received workers' compensation benefits from Defendant. As written, however, that qualification does not exist.

Consistent with that interpretation, the Court finds that the Newsuan Action falls within the scope of the Agreement. In the Newsuan Action, Newsuan alleges that she was injured while working at a facility affiliated with Plaintiff. (Mot. at 4.) Losses arising therefrom thus "relate to a claim against [Plaintiff] that if made against [Defendant] would have been covered by workers' compensation insurance."[2] (Mot. Ex. 1 at 12.)

### 1. Defendant Breached Its Duty to Defend Plaintiff in the Newsuan Action.

Under Arizona law, the duty to defend and the duty to indemnify are distinct. *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 982 (Ariz. Ct. App. 1986). The Court turns first to the duty to defend. In Arizona, "[t]he duty to defend arises at the earliest

---

[2] Indeed, the fact Newsuan received workers' compensation benefits from Defendant for the Newsuan Injury reinforces this finding.

stages of litigation and generally exists regardless of whether the insured is ultimately found liable." *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 913 (D. Ariz. 2016) (quoting *INA Ins. Co. of N. Am.*, 722 P.2d at 981). The duty to defend applies if the complaint alleges facts that come within the coverage of an indemnity provision. *See Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973); *see also A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 204 P.3d 1051, 1056 (Ariz. Ct. App. 2008) (applying insurance principles of indemnity and defense in a non-insurance commercial context). As previously stated, the Newsuan Action comes within the coverage of the Agreement. Accordingly, the Court finds that Defendant breached its duty to defend Plaintiff.

### 2. Defendant Must Indemnify Plaintiff for Losses Incurred in the Newsuan Action.

The Court also finds that Defendant must indemnify Plaintiff for losses incurred in the Newsuan Action. The Agreement provides that Defendant's indemnity obligation applies when Plaintiff incurs losses relating to a claim against Plaintiff that "if made against [Defendant] would have been covered by workers' compensation insurance, even if the claimant alleges that the Losses are caused by the negligent actions . . . of [Plaintiff]." (Mot. Ex. 1 at 12.) Even if Plaintiff's negligence caused the Newsuan Injury, Plaintiff's negligence would have no effect on Defendant's indemnity obligations given the clear and unequivocal terms of the Agreement.[3] *See Grubb & Ellis Mgmt. Servs., Inc. v. 407407 B.C., L.L.C.*, 138 P.3d 1210, 1214 (Ariz. Ct. App. 2006) ("[A] 'specific' indemnity agreement . . . imposes upon indemnitor an obligation to indemnify for any type of damage, even though also caused by the negligence of indemnitee.").

---

[3] Defendant also argues that Plaintiff's interpretation of the Agreement "violates public policy" because it "shield[s] [Plaintiff] from all liability, regardless of [Plaintiff's] intentional, reckless, and illegal acts." (Resp. at 11.) Because, as the Court discusses below, Defendant has only made allegations of negligence, this argument is unpersuasive. Under Arizona law, "contracts indemnifying a party against his own negligence do not violate public policy" as long as "the indemnitor's obligation to do so is expressed in clear and unequivocal terms." *Wash. Elementary Sch. Dist. No. 6 v. Baglino Corp.*, 817 P.2d 3, 6 (Ariz. 1991).

**C. Defendant Fails to Allege a Plausible Implied Covenant of Good Faith and Fair Dealing Counterclaim.**

Plaintiff next argues that Defendant's implied covenant of good faith and fair dealing counterclaim fails as a matter of law because it "contradicts the Agreement's express indemnity obligation." (Mot. at 14.) Defendant, however, contends that Plaintiff "breached the implied covenant of good faith and fair dealing by knowingly violating applicable safety laws and safety standards." (Resp. at 17.) Defendant further argues its counterclaim does not contradict the Agreement because "[t]he indemnity provision does not address [Defendant's] reasonable expectation that [Plaintiff] would follow applicable safety laws and safety standards in operating its facilities." (Resp. at 17.)

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002), *as corrected* (Apr. 9, 2002). This implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* A party may "breach its duty of good faith without actually breaching an express covenant in the contract." *Id.* at 29.

The Court finds that Defendant failed to allege sufficient facts to raise a plausible inference that Plaintiff breached the implied covenant of good faith and fair dealing. Defendant alleges that Plaintiff "breached the implied covenant of good faith and fair dealing by performing the Agreement in a way that caused unreasonable risk of physical harm and injury to [Defendant's] employees." (Countercl. ¶ 55.) But Defendant alleges no non-conclusory facts that suggest Plaintiff knew it was violating applicable safety laws, and thus Defendant's allegations are at most tantamount to an allegation of negligence. Negligence alone is not sufficient to find bad faith liability; rather, Plaintiff must have engaged in "conscious conduct." *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 133–34 (Ariz. Ct. App. 1986) (internal quotations omitted); *see also Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992) (noting that bad faith is not proven by negligence, but rather the act or omission must be intended). Defendant has failed to

allege sufficient non-conclusory facts to plausibly trigger Arizona's good faith and fair dealing law.

Moreover, the Agreement expressly provides that Defendant will defend and indemnify Plaintiff for losses related to claims like the Newsuan Action, "even if the claimant alleges that the Losses are caused by the negligent actions . . . of [Plaintiff]." (Mot. Ex. 1 at 12.) Because, as pled, Defendant's counterclaim is grounded in negligence, it contradicts the express terms of the Agreement. *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) ("The general rule is that an implied covenant of good faith and fair dealing cannot directly contradict an express contract term."). Accordingly, Defendant's counterclaim cannot survive a Rule 12(c) motion without any non-conclusory factual allegations to make a claim of breach of good faith and fair dealing at least plausible. *See Twombly*, 550 U.S. at 570.

If a defective claim can be cured, a claimant is entitled to amend the claim before it is dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000). Because it is possible that Defendant could allege non-conclusory facts from which the Court could plausibly infer that Plaintiff knowingly or intentionally violated applicable safety laws, the Court grants Defendant leave to amend its Counterclaim. *See id.* If any such amendment fails to cure the defects in Defendant's counterclaim for breach of the covenant of good faith and fair dealing, the Court will dismiss the Amended Counterclaim with prejudice.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. 25).

**IT IS FURTHER ORDERED** granting Defendant leave to amend its Counterclaim in accordance with the provisions of this Order, if it so chooses. Defendant shall file any Amended Counterclaim no later than September 30, 2019.

Dated this 10th day of September, 2019.

Honorable John J. Tuchi
United States District Judge